**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| SALON PHOENIX COSMETOLOGY LLC and SALON HAIRROIN, INC., on behalf of themselves and all others similarly situated.<br><br>    Plaintiffs,<br><br>  v.<br><br>GROUPON, INC.,<br><br>    Defendant. | **CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>No. 22-cv-7162 |

**CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

NATURE OF THE ACTION ........................................................................ 1

THE PARTIES ......................................................................................... 4

JURISDICTION AND VENUE .................................................................. 5

FACTUAL ALLEGATIONS ....................................................................... 6

    I.     Background on Groupon and Its Business Model .................................. 6

         A.    Groupon is an Online Platform Connecting Consumers to Businesses That Offer Discounted Goods and Services .............. 6

         B.    Groupon Uses Web Traffic to Draw in New Customers ............. 7

    II.    Groupon Has Made Unauthorized Pages for Tens of Thousands of Unaffiliated Businesses ................................................................... 9

         A.    Groupon Uses Plaintiffs' Information without Permission ....... 10

             i)    Salon Phoenix.................................................................... 10

             ii)   Hairroin Salon.................................................................. 16

         B.    These Pages Only Serve to Benefit Groupon............................. 21

         C.    Groupon's Conduct Confuses Customers and Harms Plaintiffs and Other Businesses ................................................................ 24

    III.   Groupon Knows How to Disclaim Affiliation with Non-Partner Merchants, Yet Fails to Do So ......................................................... 25

CLASS ACTION ALLEGATIONS ............................................................ 29

FIRST CAUSE OF ACTION ................................................................... 34

SECOND CAUSE OF ACTION................................................................ 37

THIRD CAUSE OF ACTION ................................................................... 40

FOURTH CAUSE OF ACTION ................................................................ 40

FIFTH CAUSE OF ACTION .................................................................... 42

SIXTH CAUSE OF ACTION ................................................................... 44

SEVENTH CAUSE OF ACTION ............................................................. 45

PRAYER FOR RELIEF ................................................................................................ 46

Plaintiffs Salon Phoenix Cosmetology LLC ("Salon Phoenix") and Salon Hairroin, Inc. ("Hairroin Salon"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Groupon, Inc ("Groupon"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, on their own investigation, and on the investigation of their counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.     Small businesses do not exist to line the pockets of tech companies.

2.     These businesses do not work hard to develop their goodwill and reputations for tech companies to misappropriate and profit from their efforts.

3.     Groupon is one such tech company that has profited from the unauthorized misappropriation of tens of thousands of small businesses' goodwill and reputations. And it does so while falsely or otherwise inaccurately describing these businesses' services and operations.

4.     Groupon offers a platform where businesses sell discounted goods and services to customers. While some small businesses choose to affiliate with Groupon, tens of thousands of others are listed on Groupon's website without permission or consent.

5.     For instance, Plaintiff Salon Phoenix is listed on Groupon's website without its permission. Salon Phoenix is a high-end hair salon in Hoboken, New Jersey. Salon Phoenix does not need Groupon's help to find new customers because it takes only a limited number of clients on an appointment-only basis.

6.      Yet, Salon Phoenix appears on Groupon's website, with its business inaccurately and falsely described as "a day spa that caters to both men and women" and one that "happily accepts walk-in appointments." Groupon also falsely states that Salon Phoenix offers "make up application," or a "wide array of beauty and cosmetic services." This simply isn't true; Salon Phoenix only does hair.

7.      Groupon does not and cannot actually offer customers any discounted services at Salon Phoenix, nor at many of the tens of thousands of other small businesses that appear on Groupon's website without consent.

8.      Indeed, a customer cannot find these unauthorized listings by using Groupon web pages or applications. These pages may only be found by web searches.

9.      These unauthorized web pages serve no useful purpose beyond diverting web traffic to the Groupon site, creating new business for Groupon and its affiliated third-party merchants.



10.      For example, clicking on the link shown above will take a potential customer to Groupon's unauthorized page for the business, where the user will be prompted to sign up for Groupon for a 20% discount and will also be greeted with a banner to "Explore Deals Nearby" and a list of recommended competitor businesses.





11.     To put it simply, a customer searching for Salon Phoenix could end up at the Groupon website instead of Salon Phoenix's *actual* website. Thus, Groupon takes the goodwill and reputation of tens of thousands of businesses to manipulate internet search results and therefore drive web traffic to its own website.

12.     Groupon relies heavily on search engine results. As its 2020 and 2021 Annual Report admits:

> We also rely heavily on Internet search engines to generate traffic to our websites, principally through search engine marketing ("SEM") and SEO. The number of consumers we attract from search engines to our platform is due in large part to how and where information from, and links to, our websites are displayed on search engine results pages.

13.     Groupon does not pay businesses for the privilege of using their information and inaccurately describing them on their website.

14.     Because Groupon profits from misappropriating the hard-earned reputation and goodwill of other businesses—by falsely affiliating them with Groupon and inaccurately describing their services—Plaintiffs bring this proposed class action against Groupon under the Lanham Act, the common law of unfair competition, and various state statutes to stop Groupon's misconduct and disgorge its ill-gotten gains.

## THE PARTIES

15.     Plaintiff Salon Phoenix Cosmetology LLC ("Salon Phoenix") is a New Jersey limited liability corporation located in Hoboken, New Jersey.

16. Plaintiff Salon Hairroin, Inc. ("Hairroin Salon") is a California corporation, which does business as "Hairroin Salon" and is located in Los Angeles, California.

17. Both Plaintiffs appear on Groupon's website without permission.

18. Defendant Groupon, Inc. ("Groupon") is incorporated in Delaware and maintains its principal place of business at 600 W. Chicago Ave. Ste. 400, Chicago, IL 60654.

19. Though based in Chicago, Groupon does business throughout the United States and internationally.

20. Groupon has more than 1,200 employees in North America and more than 2,300 internationally, according to data from its 2021 Annual Report.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Classes exceeds 100; and many members of the proposed Classes are citizens of different states than the Defendant.

22. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332(d)(2).

23. This Court has personal jurisdiction over Defendant Groupon, Inc. because Defendant is headquartered in the State of Illinois, regularly conducts business in this Judicial District, and has extensive contacts with this forum.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant transacts substantial business in this District.

25.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

### I.     Background on Groupon and Its Business Model

#### A.     Groupon is an Online Platform Connecting Consumers to Businesses That Offer Discounted Goods and Services

26.     Groupon, Inc. operates an online marketplace, known as Groupon, on which third-party merchants advertise and sell discounted goods and services.

27.     To a lesser extent, Groupon sells first-party goods on its platform.

28.     Groupon was founded in 2008 in Chicago, Illinois, and today transacts business across the country and throughout the world.

29.     Groupon enters into agreements with third-party merchants, whereby the merchants advertise a certain quantity of discounted items or services ("deals") on the Groupon online marketplace. In exchange for the ability to advertise and sell on the marketplace, these merchants compensate Groupon with a commission, calculated as a set percentage of the revenue collected from every transaction.

30.     Groupon categorizes deals offered on its platform into one of three types: "Local," meaning service experiences, "Goods"—including "electronics, sporting goods, jewelry, toys, household items and apparel"— and "Travel."

31. Groupon is a self-proclaimed "two-sided marketplace," which connects two sorts of customer bases. This means, among other implications, that Groupon's growth and success is tied to simultaneous uptake by both sides of the marketplace.

32. Economists Thomas Eisenmann, Geoffrey Parker, and Marshall W. Van Alstyne also explain in the Harvard Business Review:

> The two groups are attracted to each other — a phenomenon that economists call the network effect. With two-sided network effects, the platform's value to any given user largely depends on the number of users on the network's other side. Value grows as the platform matches demand from both sides.

33. Said plainly: Neither merchants nor customers would hang around on Groupon if the platform did not have a large enough population of the opposite user group. There is no point in shopping for deals if there is nothing to shop for, and there is no point in offering a deal if there is no one to shop for it.

34. Though Groupon describes itself to merchant partners as an advertising platform, it earns revenue as a transaction middleman. The majority of its revenue, by far, comes from commissions earned on third-party transactions. These are reported, on a net basis, as "service revenue."

35. In 2021 Groupon reported roughly $606,429,000 in service revenue.

**B.     Groupon Uses Web Traffic to Draw in New Customers**

36. Because Groupon earns revenue through commissions, it benefits monetarily from every transaction. It is therefore a core objective of the business to expand to as many new customers as possible.

37.     One important way Groupon finds potential new customers is by appearing in web search results, such as on Google (through which are conducted over 90% of all internet searches).

38.     According to Groupon's 2021 and 2020 Annual Reports:

> We also rely heavily on Internet search engines to generate traffic to our websites, principally through search engine marketing ("SEM") and SEO. The number of consumers we attract from search engines to our platform is due in large part to how and where information from, and links to, our websites are displayed on search engine results pages.

39.     Groupon also warns investors of the potential risk to revenue if these customer attraction pathways falter:

> If we are unable to re-engage and acquire new customers in numbers sufficient to grow our business and offset the number of customers that have ceased to make purchases, or if new customers do not make purchases at expected levels, our revenue may decrease and our operating results may be adversely affected.

40.     Finding new website visitors and converting them into customers is critical to Groupon's growth. From the early days of the platform making this conversion has been a paramount goal and has guided the way Groupon designs its web pages and app. In its 2012 Annual Report, Groupon explained to investors that, "Visitors are prompted to register as a subscriber when they first visit our website and thereafter use the website as a portal for our daily deals."

41.     Groupon now boasts that "1 in 5 Web users visit Groupon each month" and that it has over 25 million active global users:[1]



## II.     Groupon Has Made Unauthorized Pages for Tens of Thousands of Unaffiliated Businesses

42.     There are many businesses—likely numbering in the tens of thousands—that Defendant lists on the Groupon platform, despite these businesses' lack of awareness or agreement.

43.     Links to these businesses' unauthorized Groupon pages often appear in the Google search results for the businesses themselves, potentially diverting web traffic to the Groupon site.

44.     Clicking on one of these links will take a potential customer to Groupon's unauthorized page for that business, where the user will first be prompted to sign up for Groupon for a 20% discount, and then will be greeted with a banner suggesting that the visitor should "Explore Deals Nearby."

---

[1] https://www.groupon.com/merchant/

45.     In other words, these unauthorized web pages serve no useful purpose beyond diverting web traffic to the Groupon site, creating new business for Groupon and its affiliated third-party merchants.

46.     These unauthorized listings use combinations of stock language that confuse consumers as to the affiliations of Plaintiffs and the class members with Groupon. This stock language—such as "Pamper yourself silly with a wide array of beauty and cosmetic services," "The stylists at this salon can also accommodate walk-ins any day of the week," or "Cyclists are in luck. this [sic] salon provides bike parking"—also inaccurately describes these businesses and their services.

**A.     Groupon Uses Plaintiffs' Information without Permission**

47.     Defendant's unauthorized use of Plaintiffs' information illustrates the common pattern of harm to the class.

**i)     Salon Phoenix**

48.     Salon Phoenix is a high-end hair salon in Hoboken, New Jersey. A sole proprietorship, it takes a limited number of clients on an appointment-only basis and focuses on creating the best possible experience for each client.

49.     Salon Phoenix has never done businesses with Groupon, nor has ever offered deals or vouchers of any kind.

50.     Nevertheless, Groupon created an unauthorized page for Salon Phoenix, which begins with a pop-up solicitation to sign up for Groupon:



51.    The page also contains a pop-up imploring users to "Explore Deals Nearby" and provides a recommended list of competitor businesses:



52.     The page contains two text blurbs supposedly about Salon Phoenix, both of which are generated from stock language, identifiable as such because the information within them is largely incorrect, and because the tone of the language is incongruous with Salon Phoenix's business brand.

53.     The main body of text reads:

> Spend a day relaxing with your friends and family at Hoboken's Salon Phoenix, a day spa that caters to both men and women. Pamper yourself silly with a wide array of beauty and cosmetic services, such as make up application. This spa happily accepts walk-in appointments for your convenience. Major credit cards are accepted, so you can save yourself a trip to the ATM. Slide into a space on the street or park your vehicle in the adjacent lot. When your

ends are starting to split, fear not, call Salon Phoenix and
they will get your hair looking healthy again.

54.     To the right of Salon Phoenix's name, Groupon also uses stock language:

Escape the hustle and bustle of your busy week with a trip
to Salon Phoenix, a fabulous day spa in Hoboken, NJ.
Pamper yourself silly with a wide array of beauty and
cosmetic services, such as make up application.

55.     The page's descriptive text is replete with false information about Salon
Phoenix. Salon Phoenix does not take male clients; it does not accept walk-ins; it does
not offer "make up application," nor a "wide array of beauty and cosmetic services"—
it only does hair. The description of the ease with which customers might find a
parking space is also wrong; Salon Phoenix devotes an entire page on its website to
ensuring that clients know how they might park legally and get to the studio with
ease.

56.     Beyond the inaccurate content, the tone of the stock language also
starkly contrasts with Salon Phoenix's own branding. Salon Phoenix's own website
says, for example, "My philosophy is about passionate professionalism, building
meaningful relationships, & design inspired by natural beauty. My attention is
always on you; I don't double-book clients."

57.     The page also contains three pieces of contact information for Salon
Phoenix: an incomplete street address, a website link, and the owner's personal phone
number. This information was removed from all of Salon Phoenix's websites and
social media more than a year ago, by intentional choice of the owner. She does not

want the phone number to be public, as all pertinent information about her salon is displayed on Salon Phoenix's website.

58.     The page also shows the approximate location of Salon Phoenix on a map.

59.     On the right side of the page is a slideshow of deals available at Groupon-partnered merchants near Salon Phoenix.

60.     Initially on the bottom of the page is a banner encouraging site visitors to "Explore Deals Nearby." When clicked, it brings users further to the bottom of the page, where they can find a large map interface showcasing available Groupon deals proximate to Salon Phoenix:



- 14 -

61.  While this unauthorized page exists for the benefit of Groupon, it appears on the first page of Google search results for Salon Phoenix. The below image shows the results for a search for "Salon Phoenix Hoboken," scrolled slightly down to fit the screenshot into the text of this pleading. The Groupon listing appears as the ninth result in this particular search:



62.  In sum, while Salon Phoenix's unauthorized Groupon page misrepresents the salon's brand and gives out incomplete information that might lead to customer confusion, the page actually functions to create profit for Groupon by converting those potential Salon Phoenix customers into Groupon customers.

### ii)    Hairroin Salon

63.    Hairroin Salon is a high-end hair salon in Los Angeles, California.

64.    Groupon also created three unauthorized pages for Hairroin Salon. The first two pages—one for its Los Angeles location and one for its now-closed New York location—use stock language that is similar and content and tone to the unauthorized page for Salon Phoenix.

65.    Visitors arriving to the two pages with stock language may first be prompted by a large pop-up ad to sign up for Groupon and receive a discount:



66.    The stock language on the page inaccurately describes Hairroin Salon and its services:

> Looking for a change? Book a hair appointment with a
> stylist at Los Angeles's Hairroin Salon and watch them
> work their magic. Transform your look with a refreshing
> cut by this salon. With the beauty products selection at this
> establishment, you can keep your look on point. The
> stylists at this salon can also accommodate walk-ins any
> day of the week. Paying by major credit card is always a
> payment option at this highly-rated establishment.
> Hairroin Salon is surrounded by a number of street
> parking options for patrons. Cyclists are in luck. this salon
> provides bike parking. For top-of-the-line hair treatments,
> great customer service, and a quality atmosphere, be sure
> to tame your tresses at Hairroin Salon.

67. Here, the inaccuracies include the accommodation of walk-ins and the provision of bike parking.

68. The address listed is also incorrect; Hairroin Salon has moved since the unauthorized page was created.

69. Groupon also created a page for Hairroin Salon's New York location, which is permanently closed. That listing contains a different set of stock language, too:

> Discover a professional hair care experience at New York's
> Hairroin Salon and leave feeling renewed. Leave the
> creation of a perfect hairstyle in the very capable hands of
> this salon's stylists. Heading to this salon? Make sure you
> make an appointment beforehand since this establishment
> is strictly by-appointment. Hairroin Salon also accepts
> credit card payments for those who prefer to pay with
> plastic. This salon provides ample space for bikers to store
> their bikes. Keep your hair looking on point and book a
> beautifying treatment from Hairroin Salon.

70. There is also a third unauthorized Groupon page for Hairroin Salon, which lacks the stock phrases and takes a different form: it is a page from when Hairroin Salon made one businesses agreement with Groupon, eleven years ago.

71. At no point since then has Hairroin Salon entered any business agreements with Groupon.

72. The page is pictured below:



73. This version of Hairroin Salon's unauthorized page also seeks to convert visitors into customers via a large pop-up ad that initially blocks the page.

74. In addition, the advertising for Groupon-partnered merchants comes right at the top. "Other Deals That Might Interest You" include an oil change, a hamburger, and a Sam's Club membership—three things totally unrelated to a hair

salon, but related to each other in that they make money for Groupon when customers buy them.

75.     The text blurbs on this page describe the deal itself, in addition to the salon, and feature snippets of Yelp reviews:



76.     The age of the page is obvious from the "Fine Print" of the deal: "Promotional value expires Jul[.] 7, 2011," it says.

77.    The address listed for Hairroin Salon is incorrect, as the growing business did move locations in the elapsed eleven years since it agreed to post the expired Groupon deal.

78.    As with Salon Phoenix, Hairroin Salon's Groupon page appears on the first page of Google search results for the salon. The link for the Groupon page appears eighth in the search results, and appears to suggest that Hairroin Salon has an active deal with Groupon. The image below shows Google search results for "Hairroin Salon Los Angeles," scrolled down slightly to fit the results neatly in the text of this pleading:



79.     Web searchers could reasonably be enticed to click the web search result, thinking that Hairroin Salon has an active deal, in light of the prominently featured text, "Up to 73% off Services at Hairroin Salon."

80.     While Hairroin Salon might be eleven years out-of-date as a Groupon affiliate, its brand is still useful to Groupon as a net to catch web traffic. When potential Hairroin Salon customers search for it on Google, they may find Groupon; new visitors may arrive to the Groupon site hoping to book appointments with Hairroin Salon; Groupon can then convert customers, benefitting itself and its merchant affiliates.

**B.      These Pages Only Serve to Benefit Groupon**

81.     Groupon's unauthorized landing pages of Plaintiffs and the class members are accessible only through internet searches. Users who might search for Plaintiffs via the Groupon website would find nothing.

82.     Below is an example search for "Salon Phoenix," with location set to Hoboken, NJ:



83.    And below is a similar example search, for "Hairroin Salon," with location set to Los Angeles, CA:



84.    That is, Groupon's unauthorized pages for Plaintiffs are not viewable from inside the platform; they may only be found through web searches.

85.    This scheme benefits Groupon only. While it misappropriates Plaintiffs' and the class members' goodwill and reputations to drive traffic to the Groupon website, a user starting their searches for businesses on Groupon would not be exposed to Plaintiffs' listings.

86.    In other words, Groupon uses Plaintiffs and the class members to entice customers to purchase Groupon products, but it does not expose Groupon customers to Plaintiffs and the class members.

87.    Groupon does not compensate Plaintiffs and the class members for misappropriating their goodwill and reputations, and does not otherwise benefit them.

88.     Upon information gathered from investigations by Plaintiffs' attorneys, Plaintiffs allege that there may be tens of thousands of businesses that appear on similar Groupon pages without permission.

89.     Groupon reuses each bit of stock language tens of thousands of times, mixing and matching to make pages that grab web traffic and falsely affiliate tens of thousands of businesses.

## C.     Groupon's Conduct Confuses Customers and Harms Plaintiffs and Other Businesses

90.     Plaintiffs worry that Groupon's unauthorized pages can and will cause harms, including customer confusion as to Plaintiffs' affiliation with Groupon and their services and locations.

91.     Groupon's false affiliation of thousands of small businesses causes injury inherent in the loss of control of goodwill and reputation.

92.     Small businesses may choose how they are represented online, how their services are described, and which businesses they want to affiliate or partner with.

93.     Small businesses also have the right to profit from their goodwill and reputation, yet Groupon does not compensate them for the use of their valuable, intangible goods.

94.     Further, Groupon falsely describes businesses and their services, which is likely to cause customer confusion. To illustrate, Groupon advertising that small businesses take "walk-ins any day of the week," or offer non-existent services, is likely to confuse customers as to the businesses' services offerings.

95.    In addition, this false association with a discount company may tarnish businesses' reputations.

96.    Groupon stands for discounted goods and services. While offering discounts, or being perceived to do so, may increase some businesses' customer bases, many small businesses would suffer reputational harm from being associated with Groupon.

97.    An in-demand luxury salon, such as either Plaintiff, for example, might see no positive benefit from an association with Groupon, and would actually incur reputational harm.

98.    The reputational harm inherent in associating with Groupon has been studied and acknowledged by academics. For instance, in the Proceedings of the 13th ACM Conference on Electronic Commerce, computer scientists John W. Byers et al. published their research article titled, "The Groupon Effect on Yelp Ratings: A Root Cause Analysis." The Groupon Effect, as the authors term it, is the common phenomenon of "sharp declines in Yelp rating scores coincident with Groupon offers."

## III.    Groupon Knows How to Disclaim Affiliation with Non-Partner Merchants, Yet Fails to Do So

99.    Because Groupon's business model relies heavily on search engine results, this is not the first time Groupon has listed scores of businesses without asking for permission.

100.    In 2014, Groupon launched a program called Pages, which it started by listing more than 7 million merchants on its platform, with the stated aim to list all U.S. businesses.[2]

101.    Pages was intended to greatly increase Groupon's online presence and drive the growth of its marketplace.

102.    Pages operated similarly to Yelp, allowing customers to share information about the businesses.

103.    Although Groupon created these pages without businesses' input, similarly to Yelp, it allowed businesses to claim the page and modify it.

104.    However, in the Pages program, Groupon clearly disclaimed the affiliation between it and the businesses—*unlike* the unauthorized landing pages of Plaintiffs and the proposed classes as alleged here.[3]

105.    In Pages, an unaffiliated merchant's listing contained a clear "Is this your business? Claim this page" box. It also prominently displayed a "Request a Deal" box, inviting customers to identify if they wished this business to partner with Groupon:

---

[2] https://investor.groupon.com/press-releases/press-release-details/2014/Groupon-Announces-Pages-a-New-Way-to-Connect-People-with-Millions-of-Local-Businesses/default.aspx

[3] https://www.businesswire.com/multimedia/home/20141022005532/en/



106.    Today's unauthorized pages look like remnants of the Pages program, judging by the folder structure of Groupon's website evident in its URLs.

107.    The URLs for Plaintiffs' unauthorized pages begin, "https://www.groupon.com/**biz**," set off with the subfolder "biz." URLs for the pages of Groupon-affiliated merchants, by contrast, all begin, "https://www.groupon.com/**deals**," with the subfolder "deals," followed by a version of the merchant name as the page slug (the last section of the URL).

108.    Business pages that begin with https://www.groupon.com/**biz** may well exceed over 2.5 million results.

109.   When Groupon began its Pages program, it used the "biz" subfolder for those pages. The below screenshot comes from a 2014 news article describing the Pages program[4]:



110.   Although Groupon no longer has the Pages function, it still lists businesses without consent.

111.   Worse, now Groupon does not contain any language disclaiming any affiliation with Plaintiffs and the class members. Nor does it provide a function to "claim" or remove an unauthorized page.

112.   In sum, Groupon's unauthorized use of Plaintiffs' and the class members' names, goodwill, and reputation to drive Groupon's web traffic is likely to cause consumer confusion as to these small businesses' affiliation with Groupon.

---

[4] https://searchengineland.com/groupon-local-pages-part-company-evolution-local-search-site-206908

## **CLASS ACTION ALLEGATIONS**

113.    Plaintiffs bring this action on behalf of themselves and on behalf of the

following class (the "Nationwide Class"), defined as follows:

> All persons or entities in the United States that Groupon
> has listed on its website through the creation of a business
> landing page, and that did not agree to be a Groupon
> partner, and/or such subclasses as the Court may deem
> appropriate.

114.    Plaintiff Salon Phoenix also brings this action on behalf of itself and on

behalf of the following class (the "New Jersey Class"), defined as follows:

> All persons or entities in New Jersey that Groupon has
> listed on its website through the creation of a business
> landing page, and that did not agree to be a Groupon
> partner, and/or such subclasses as the Court may deem
> appropriate.

115.    Plaintiff Hairroin Salon also brings this action on behalf of itself and on

behalf of the following class (the "California Class"), defined as follows:

> All persons or entities in California that Groupon has listed
> on its website through the creation of a business landing
> page, and that did not agree to be a Groupon partner,
> and/or such subclasses as the Court may deem appropriate.

116.    Excluded from the proposed Classes are Defendant, its parents,

subsidiaries, officers, directors, and any entity in which Defendant has a controlling

interest.

117.    Plaintiffs reserve the right to re-define any of the class definitions prior

to class certification and after having the opportunity to conduct discovery.

118. The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continue to engage in uniform and standardized conduct toward the class members.

119. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

120. Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

121. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1–4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

122. **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes many thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records.

123. **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control or Plaintiffs and the class members themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

124. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) whether Defendant obtained class members' permission before listing them on Defendant's website;

(b) whether Defendant's creation of the unauthorized listings drove more business to Groupon's partner businesses;

(c) whether Defendant targeted clients of the class members and unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly redirected them to Groupon partner businesses;

(d) whether Defendant otherwise engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices;

(e) whether Defendant profited as a result of its deceptive acts;

(f) whether reasonable consumers are likely to be misled by Defendant's conduct;

(g) whether Defendant had knowledge that its behavior was likely to deceive a reasonable customer;

(h) whether Defendant violated the applicable statutes identified herein;

(i) whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(j) whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(k) whether Plaintiffs and the Classes are entitled to civil penalties; and

(l) whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

125. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of the Plaintiffs and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiffs and Classes. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct and were damaged in the same way. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

126. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are adequate representatives of the Classes because their interests do not conflict with

the interests of the class members, and they have retained counsel competent and experienced in complex class action, business competition, and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

127. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

128. **Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(2)). In the alternative, this action may properly be maintained as a class action, because:

(a)    the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b)    the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)    Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## <u>FIRST CAUSE OF ACTION</u>

**Unfair Competition and False Affiliation**
**of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

129.   Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

130.   Defendant's conduct as set forth herein significantly impacts interstate commerce and commerce within this district.

131.   Section 43(a)(1)(A) of the Lanham Act provides liability as to

> Any person . . . who uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description

of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

132. As described more fully herein, Defendant has engaged in a course of conduct with respect to the creation of unauthorized listings that unfairly and falsely affiliates Plaintiffs and class members with Defendant, diverting potential customers into purchasing Groupon's deals.

133. This conduct has caused, and is likely to cause, mistake and deception as to the affiliation, connection, or association of Plaintiffs and the other class members.

134. This course of conduct includes, but is not limited to, the following:

(a)    confusing, or likely confusing, potential customers about the existence of any affiliation between Plaintiffs and class members with Groupon;

(b)    misrepresenting that Plaintiffs and the class members have a consensual business partnership with Groupon;

(c)    misrepresenting the services offered by Plaintiffs and class members;

(d)    misrepresenting that the information listed about Plaintiffs and the class members is accurate;

(e)     failing to inform Groupon customers that Plaintiffs and the class members do not know they are listed on Groupon;

(f)     failing to inform Groupon customers that Plaintiffs are in no way affiliated with Groupon;

(g)     harming the reputations of Plaintiffs and the class members by falsely affiliating them with Groupon; and

(h)     harming Plaintiffs and the class members by misappropriating their goodwill and reputation to drive Groupon's revenue.

135.    The false and misleading statements and omissions described herein are material because they are intended to have an impact on whether consumers become Groupon customers.

136.    The false and misleading statements and omissions described herein actually deceive or have the tendency to deceive customers of Plaintiffs and class members.

137.    Defendant's conduct, as described herein, constitutes a violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

138.    As a direct and proximate result of Defendant's violation and false and misleading statements and omissions described herein, pursuant to 15 U.S.C. § 1117, Plaintiffs and the class members have been, or are likely to be, damaged. Plaintiffs and the Classes are likewise entitled to recover and disgorge from Defendant all profits, gains, and advantages obtained stemming from this improper conduct.

139.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Defendant's conduct was knowing, characterized by malicious intent, and was explicitly designed to deceive the general public in order to reap profits unjustly at the expense of Plaintiffs and the Classes, entitling Plaintiffs to a statutory multiplier of actual damages, additional damages, and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION

**False Advertising in Violation of Section 43 of the Lanham Act,
15 U.S.C. § 1125(a)(1)(B)
(On Behalf of Plaintiffs and the Nationwide Class)**

140.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

141.    Defendant's conduct as set forth herein significantly impacts interstate commerce and commerce within this District.

142.    Section 43(a)(1)(B) of the Lanham Act provides liability as to

> Any person . . . who uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

143.    As described more fully herein, Defendant has engaged in a course of conduct with respect to the advertising of its businesses listings that contains false

and/or misleading statements of fact, or omissions of essential facts, including those about Plaintiffs and class members, which did not consent to partner with Groupon.

144. These false and/or misleading statements, or omissions of material facts, include, but are not limited to, the following:

(a) confusing or likely confusing, potential customers of Plaintiffs and the class members as to Plaintiffs and the class members' affiliation with Groupon;

(b) misrepresenting that Plaintiffs and the class members have a partnered with Groupon;

(c) misrepresenting the services offered by Plaintiffs and the class members;

(d) misrepresenting that the information listed about Plaintiffs and the class members is accurate;

(e) failing to inform Groupon customers that Plaintiffs are in no way affiliated with Groupon;

(f) harming the reputations of Plaintiffs and the class members by falsely affiliating them with Groupon;

(g) harming the reputations of Plaintiffs and the class members by refusing to remove from Groupon's website the listings of businesses that have requested disaffiliation; and

(h)     stealing potential customers from Plaintiffs and the class members by diverting them to purchase services from Groupon's partner businesses.

145.    The false and misleading statements and omissions described herein actually deceive or have the tendency to deceive customers of Plaintiffs and the class members.

146.    Defendant's conduct as described herein constitutes a violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

147.    As a direct and proximate result of Defendant's violation and false and misleading statements and omissions described herein, pursuant to 15 U.S.C. § 1117, Plaintiffs and the Classes have or are likely to be damaged. Plaintiffs and the Classes are likewise entitled to recover from Defendant all profits, gains, and advantages obtained during execution of this improper conduct.

148.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Defendant's conduct was intentional, characterized by malicious intent, and was explicitly designed to deceive the general public in order to unjustly reap profits at the expense of Plaintiffs and the Classes, entitling Plaintiffs to a statutory multiplier of actual damages, additional damages, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Common Law Unfair Competition
### (On Behalf of Plaintiffs and the Nationwide Class)

149.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

150.  As described herein, Defendant has engaged in a course of conduct with respect to the advertising of Groupon's deals that unfairly and falsely affiliates Plaintiffs and class members with Defendant, and then diverts potential customers into purchasing services from Groupon's partner businesses instead of purchasing services from Plaintiffs and the class members.

151.  By misappropriating and trading upon the goodwill and business reputation of Plaintiffs and the class members, Defendant has acted in bad faith and has been unjustly enriched, and will continue to do so, unless enjoined by this Court.

152.  Defendant's wrongful conduct constitutes unfair competition under common law. Plaintiffs and the Classes have no adequate remedy at law.

153.  Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiffs and the Classes and will continue to damage them and deceive the public unless enjoined by this Court.

## FOURTH CAUSE OF ACTION

### Violations of the Illinois Consumer Fraud and Deceptive Business
### Practices Act, S.H.A. 815 ILCS 505/1
### (On Behalf of Plaintiffs and the Nationwide Class)

154.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

155.    Defendant Groupon was founded and is headquartered in Chicago, Illinois.

156.    Groupon's terms of service—which Plaintiffs and the class members did not agree to—are governed by Illinois law and mandates that any suit be brought in this State.[5]

157.    A substantial part of the events or omissions giving rise to the claims asserted herein occurred in the State of Illinois.

158.    Being located in Illinois and Chicago were and are instrumental in Groupon's past and continued growth.

159.    The first Groupon deal took place in Chicago and, at first, the city was the exclusive location for deals.[6]

160.    Chicago acted as a crucial testbed for the company, founder and then-CEO Andrew Mason explained in a December 9, 2010 interview with Charlie Rose: "So we played around with the idea in Chicago for about five or six months before we launched our second city."[7]

161.    The Illinois Consumer Fraud and Deceptive Business Practices Act, S.H.A. 815 ILCS 505/1, *et seq.* applies to Plaintiffs and other non-Illinois resident class members because the State of Illinois has an interest in regulating Defendant's

---

[5] https://www.groupon.com/legal/termsofservice

[6] https://www.groupon.com/merchant/working-with-groupon/groupon-news/the-history-of-groupon.

[7] https://charlierose.com/videos/13007

conduct within and emanating from Illinois and because Defendant's conduct in Illinois has a broad impact on consumers at large.

162.    Section 2 of the Consumer Fraud Act prohibits "[u]nfair methods of competition and unfair or deceptive acts," including but not limited to any deception, fraud, false pretense, or misrepresentation. S.H.A. 815 ILCS 505/10(a).

163.    Defendant acted in bad faith and is likely to mislead and to continue to mislead consumers as to an affiliation, connection, or association, of Defendant with Plaintiffs and the Classes.

164.    Plaintiffs and the Classes have been injured by Defendant's deceptive acts and practices.

165.    Plaintiffs and the Classes lack an adequate remedy at law.

166.    Pursuant to Section 10a of the Illinois Consumer Fraud Act, Plaintiffs and the Classes seek actual economic damages or any other remedy which the Court deems proper, including the assessment of punitive damages and award attorney's fees and costs. S.H.A. 815 ILCS 505/10(a).

## **FIFTH CAUSE OF ACTION**

### **Violations of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 (On Behalf of Plaintiffs and the Nationwide Class)**

167.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

168.    Defendant Groupon was founded and is headquartered in Chicago, Illinois, and most of Defendant's key executives and leaders are in Chicago.

169. Groupon's terms of service—which Plaintiffs and the class members did not agree to—are governed by Illinois law and mandates that any suit be brought in this State.

170. A substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

171. Being located in Illinois and Chicago were and are instrumental in Groupon's past and continued growth.

172. The first Groupon deal took place in Chicago and, at first, the city was the exclusive location for deals.

173. Chicago acted as a crucial testbed for the company, founder and then-CEO Andrew Mason explained in a December 9, 2010 interview with Charlie Rose: "So we played around with the idea in Chicago for about five or six months before we launched our second city."

174. The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*. applies to Plaintiffs and other non-Illinois resident class members because the State of Illinois has an interest in regulating Defendant's conduct within and emanating from Illinois and because Defendant's conduct in Illinois has a broad impact on consumers at large.

175. Included in the definition of "deceptive trade practice" under 815 ILCS 510/2 is, "caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services."

176. Defendant acted in bad faith and is likely to mislead and continue to mislead consumers as to an affiliation, connection, or association, or Defendant with Plaintiffs and the Classes.

177. Plaintiffs and the Classes have been injured by Defendant's deceptive acts and practices.

178. Plaintiffs and the Classes lack an adequate remedy at law.

179. Pursuant to 815 ILCS 510/3, a court may grant injunctive relief without "[p]roof of monetary damages, loss of profits or intent to deceive."

180. Further, pursuant to 815 ILCS 510/2(b), in order to prevail, Plaintiffs "need not prove competition between the parties or actual confusion or misunderstanding."

181. Accordingly, Plaintiffs and the Classes seek injunctive relief, costs, attorney fees, and any other remedy which the Court may deem proper.

## SIXTH CAUSE OF ACTION

**Violation of the New Jersey Unfair Competition Act, N.J.S.A. § 56:4-1
(On Behalf of Plaintiff Salon Phoenix and the New Jersey Class)**

182. Plaintiff Salon Phoenix incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

183. Defendant's appropriation of the business names, reputation, and goodwill of Salon Phoenix and the New Jersey Class in connection with Defendant's sales and marketing of Groupon's deals, violates the New Jersey Unfair Competition Act, N.J.S.A. § 56:4-1.

184. Plaintiff Salon Phoenix and the class members have been injured by Defendant's deceptive acts or practices.

185. Plaintiffs and the class members have no adequate remedy at law.

186. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public, unless enjoined by this Court.

## SEVENTH CAUSE OF ACTION

**Violation of the California Unfair Competition Law, California Unfair Competition Law ("UCL"), Business & Professions Code, § 17200, *et seq.*
(On behalf of Plaintiff Hairroin Salon and the California Class)**

187. Plaintiff Hairroin Salon incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

188. Defendant's knowing appropriation of the business names, reputation, and goodwill of Plaintiff Hairroin Salon and the California Class in connection with Defendant's sales and marketing of Groupon's deals, violates the UCL.

189. Defendant's deceptive trade practices occurred in the normal course of Defendant's business.

190. Defendant's deceptive trade practices significantly impact the public in deceptively misrepresenting to Groupon customers and members of the public that the Plaintiff and the California Class have any connection, affiliation, or association with Groupon.

191. Plaintiff Hairroin Salon and the California Class have suffered injury in fact as a result of Defendant's deceptive trade practices.

192.    Plaintiff Hairroin Salon and the California Class have no adequate remedy at law.

193.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Hairroin Salon and the California Class and will continue to both damage Plaintiff and the California Class and deceive the public, unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.    awarding Plaintiffs and the Classes punitive damages;

E.    awarding Plaintiffs and the Classes civil penalties;

F.    granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.    enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.      awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.      awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.      awarding pre-judgment and post-judgment interest; and

K.      granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: December 20, 2022

**POLLOCK COHEN LLP**

By: /s/ *Raphael Janove*
Raphael Janove
Adam Pollock
George Krebs
111 Broadway, Suite 1804
New York, NY 10006
(212) 337-5361
Rafi@PollockCohen.com
Adam@PollockCohen.com
GKrebs@PollockCohen.com

*Counsel for Plaintiffs and the Proposed Classes*

Jacob S. Briskman
2054 N. California Ave
Chicago, IL  60647
(312) 945- 6207
Jacob.Briskman@gmail.com

*Local Counsel for Plaintiffs*